FILED
SUPERIOR COURT
OF GUAM

2023 JUN 26 AM 9:05

CLERK OF COURT

BY:

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM,<br><br>vs.<br><br>**GREGORY LATHANIEL REESE,**<br><br>Defendant. | CRIMINAL CASE NO. **CF0431-22**<br><br>**DECISION AND ORDER** |

### INTRODUCTION

This matter is before the Honorable Vernon P. Perez on February 8, 2023 and February 10, 2023, for hearing on Defendant **GREGORY LATHANIEL REESE's** ("Defendant") Motion to Suppress. Present were Assistant Attorney General Yusuke Haffeman-Udagawa on behalf of the People of Guam ("the Government") and Defendant with counsel, Assistant Public Defender Gloria A.L. Rudolph. Having reviewed the pleadings, the arguments presented, and the record, the Court now issues the following Decision and Order.

### BACKGROUND

On July 7, 2022, Defendant was indicted for the following charges: (1) Possession of a Schedule II Controlled Substance (As a Third Degree Felony); (2) Driving While Impaired (As a Misdemeanor); and (3) Operating a Vehicle Without a Valid License (As a Violation). (Indictment, Jul. 7, 2022). These charges stem from a traffic stop effectuated on June 22, 2022 in Mongmong-Toto-Maite. *See* Decl. of Matthew M. Shuck, Magistrate's Compl., Jun. 23, 2022.

On December 14, 2022, Defendant filed the instant motion. On December 22, 2022, the Government filed its Opposition. No reply was filed.

On February 8, 2023 and February 10, 2023, the Court heard sworn testimony from Guam Police Department ("GPD") Officers Maylene Wolford ("Officer Wolford") and Eugenius Pewtress ("Officer Pewtress"). At the conclusion of the hearings, the Court gave the parties leave to file proposed findings of fact and conclusions of law. On March 10, 2023, Defendant filed his proposed findings of fact and conclusions of law. The Court did not receive any proposed findings from the Government. The Court subsequently placed the matter under advisement.

At the Suppression Hearings, the Court ascertained the following facts:

1. On the afternoon of June 22, 2022, Officers Wolford and Pewtress were in a marked patrol car patrolling the Mongmong-Toto-Maite area. Officer Pewtress was operating the vehicle and Officer Wolford was in the passenger seat.

2. While patrolling the area, Officer Pewtress observed a ray Mitsubishi Lancer on the road with an expired registration tag.

3. Officer Pewtress effectuated a traffic stop by activating the lights and sirens on the patrol vehicle.

4. The driver of the Mitsubishi Lancer pulled over halfway on the road and halfway on the shoulder near San Jose Market.

5. The driver was instructed to pull into the parking lot of San Jose Market because that was a safer location.

6. The driver parked the Mitsubishi Lancer slanted in a parking stall.

7. Officer Pewtress parked the patrol car behind the Mitsubishi Lancer.

8. Officer Pewtress testified that the Mitsubishi Lancer could still leave the parking lot without him moving the patrol vehicle. Officer Wolford also testified that Defendant still had the ability to leave in his vehicle. According to Officer Wolford, the patrol car was angled in a tactical position more on the passenger side and not directly behind the trunk of the car.

9. Officer Pewtress approached the driver's side of the vehicle. Officer Wolford testified that she was on the passenger side. Officer Wolford indicated that she could slightly hear the interaction between Officer Pewtress and the driver because she was doing

administrative tasks including confirming the vehicle's vin number and speaking with her sergeant.

10. Officer Pewtress testified that as he approached the driver's window he was immediately greeted with a strong chemical type of odor.

11. Officer Pewtress requested for the operator's driver's license, registration, and insurance. The operator was unable to provide any of the requested documentation. Officer Pewtress testified that the operator was rapidly explaining that he was borrowing the vehicle so he didn't have any of the documents and that he left his license elsewhere. The operator was unable to provide any form of identification. The operator was later identified as Defendant.

12. Officer Pewtress testified that Defendant appeared to be in a hyper state with eyes widened, pupils dilated, and slightly chattering teeth. Officer Pewtress testified that based on his knowledge and experience as a police officer, this indicated to him a possible influence from stimulant substances.

13. Officer Pewtress asked Defendant to step out of the vehicle.

14. Officer Pewtress asked Defendant if he could perform a pat-down search for any weapons, to which Defendant verbally consented to.

15. Officer Pewtress testified that when he asked Defendant to place his hands on the vehicle (the Lancer), he refused to comply and postured his body, eying him up and down. Defendant refused to follow instructions.

16. Officer Wolford testified that when Defendant exited the vehicle, he was very irate, and that he kept talking over Officer Pewtress. Officer Wolford indicated Defendant was very disrespectful.

17. Officer Pewtress indicated that Defendant was wearing a red cotton hoodie with at least three layers of clothing with black jogger pants.

18. Officer Pewtress testified that because Defendant refused to put his hands on the vehicle, he secured his hands with two sets of handcuffs because of his large stature. Officer Pewtress then proceeded to conduct a pat down.

19. Officer Pewtress found a pocket knife located on Defendant's left hip. Officer Pewtress indicated that the pocket knife was not confiscated as evidence, as it was not illegal for Defendant to be carrying a pocket knife.

20. Officer Wolford testified that she did not see Officer Pewtress conduct the pat down because she was doing administrative tasks with GPD dispatch.

21. Officer Pewtress testified that after he finished the pat down, he asked Defendant for permission to search the vehicle.

22. Officer Pewtress testified that Defendant responded "I don't know why but you have my consent." Officer Pewtress testified that he received Defendant's consent after he was secured in handcuffs.

23. Officer Wolford testified that she heard Defendant say something to the effect of "I don't know why but go ahead and search my vehicle." Officer Wolford testified that Defendant gave consent to search the vehicle about thirty (30) minutes after the initiation of the traffic stop. Officer Wolford never heard Defendant withdraw his consent or object.

24. Officer Pewtress also testified that Defendant never objected or withdrew his consent, and that Defendant reminded him that he gave him consent.

25. Officer Pewtress searched the driver's side, center area, the back seats, and under the front seats of the car. Officer Pewtress did not search the glove box or the trunk of the vehicle.

26. Officer Pewtress testified that after the vehicle was searched for a minute or so, he approached Defendant, advised him of his *Miranda* rights, and placed him under arrest. Officer Pewtress testified that he mirandized Defendant prior to the search of the trunk.

27. Officer Pewtress testified that Officer Wolford also searched the vehicle.

28. Officer Wolford testified that she searched the passenger side and the trunk. Officer Wolford did not find anything in the passenger side. While searching the trunk,

Officer Wolford discovered a syringe in a black Nike bag underneath male undergarments. Officer Wolford testified that the syringe appeared to be drug related.

29. Officer Pewtress noticed that towards the pump area of the syringe was white crystalline residue, which he recognized might be an illicit substance such as methamphetamine. The syringe was tested which resulted presumptive positive for methamphetamine.

30. Officer Pewtress testified that by the time Officer Wolford had informed him of her finding, he had already secured Defendant in the rear of the patrol vehicle.

31. Officer Pewtress did not issue Defendant a traffic ticket for the traffic violations. When asked why, Officer Pewtress indicated that he didn't have a positive identification of the driver at the time. Officer Pewtress also indicated that he didn't issue a traffic ticket after he identified the driver because he "had already arrested him."

32. Officer Wolford testified that Sergeant J.A. Santos arrived ten minutes after the traffic stop and was watching Defendant while the vehicle was being searched. Officer Pewtress testified that Sergeant Santos arrived shortly after the traffic stop and that he parked nearby to watch from a distance.

33. Officer Wolford indicated that Officer Santos's role at the scene was to calm down Defendant.

34. Officer Wolford testified that after the syringe with the suspected methamphetamines was discovered, Defendant was then placed in a patrol vehicle and transported to central precinct. Officer Wolford testified that this occurred about an hour after the initiation of the traffic stop.

35. Officer Wolford indicated that Defendant stated a female owned some of the clothing but that he claimed ownership of the black Nike bag.

36. Officer Pewtress testified that Defendant indicated only some of the items in the trunk were his. Officer Pewtress testified that Defendant may have indicated a basket of clothes was his, but he could not recall specifically.

37. Officer Wolford indicated that Officer Pewtress was the arresting officer and that she did not recall at what point Defendant was placed under arrest.

38. Officer Pewtress testified that the entire interaction was 12-15 minutes.

39. Sergeant Santos did not testify.

## DISCUSSION

Defendant moves the Court to suppress all evidence seized against him in this matter. *See generally*, Mot. Suppress, Dec. 14, 2022. The Government opposes, arguing that the traffic stop was valid and that Defendant consented to a search of the vehicle. *See generally*, Opp'n, Dec. 22, 2022. The Government acknowledges, however, "that exigent circumstances did not exist and if the consent is found to be invalid then suppression would be proper." *Id.* at 6.

The Fourth Amendment to the U.S. Constitution "protects against unreasonable searches and seizures and is made applicable to Guam via section 1421(b)(c) of the Organic Act of Guam." *People v. Chargualaf*, 2001 Guam 1 ¶ 14 (internal citations omitted). Brief investigative detentions are permitted under the Fourth Amendment "when a police officer has reasonable suspicion that an individual was engaged in or is about to be engaged in illegal conduct." *People v. Johnson*, 1997 Guam 9 ¶ 4 (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). "As a general matter, the decision to stop an automobile without a warrant is reasonable where the police have probable cause to believe that a traffic violation has occurred. Further, it is reasonable to stop a car where the police merely have a reasonable suspicion to believe the driver has committed a traffic violation." *Chargualaf*, 2001 Guam 1 ¶ 17 (citations omitted). "In order to determine whether an officer had reasonable suspicion sufficient to warrant a traffic stop, the court must look at the totality of the circumstances, taking into account the facts known to the officers from personal observation." *Johnson*, 1997 Guam 9 ¶ 6 (citation and quotation marks omitted). Furthermore, the reasonable suspicion must exist at the time the stop was initiated. *Id.* (citation omitted).

In this case, Officer Pewtress effectuated a traffic stop after observing a vehicle driving with an expired registration. The Court finds that the effectuation of the traffic stop was valid pursuant to *Chargualaf*, 2001 Guam 1. *See* 16 G.C.A. § 7101 ("Unless expressly exempted under [Title 16], a person shall not drive nor move, nor shall any owner permit to be driven or moved,

upon a highway any vehicle which is not registered as required by [Title 16]."). After effectuating the traffic stop, Officer Pewtress also found that the driver of the vehicle, Defendant, was operating the motor vehicle without a valid driver's license. Under Guam law, "a person shall not drive a motor vehicle upon a highway without having in his immediate possession a valid operator's or chauffeur's license issued under [Title 16]." 16 G.C.A. § 3101(a). "Except in cases where a different punishment is provided by [Title 16] or other law, every person who fails or refuses to comply with or violates any provision of [Title 16] is guilty or liable of a civil violation punishable by a fine not to exceed Five Hundred Dollars ($500.00)." 16 G.C.A. § 9108(a). Accordingly, Defendant was subject to two traffic violations for driving a vehicle with an expired registration and for driving without a license.

The Court must next determine whether the initial detention for the traffic violation ended and, if so, whether Defendant was subjected to a subsequent detention. "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns. Because addressing the infraction is the purpose of the stop, it may 'last no longer than is necessary to effectuate that purpose.'" *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (internal citations omitted). "Authority for the seizure thus ends when tasks tied to the traffic infraction are – or reasonably should have been – completed." *Id.* (citation omitted).

> Beyond determining whether to issue a traffic ticket, an officer's mission includes ordinary inquiries incident to the traffic stop. Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly.

*Id.* at 355 (internal citations, quotation marks and alterations omitted").

Defendant argues that the Government "failed to meet [its] burden to show that the stop was not prolonged in violation of *Rodriguez.*" (Deft. FFCL at 22). "An officer . . . may conduct certain unrelated checks during an otherwise lawful traffic stop. But . . . he may not do so in a

way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Rodriguez,* 575 U.S. at 355.

In this case, Defendant was unable to provide Officer Pewtress with any form of identification or documentation regarding the vehicle. Officer Pewtress testified that because of this and his observations that Defendant appeared to be under the influence of a controlled substance, he asked Defendant to step out of the vehicle. "[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable seizures." *Pennsylvania v. Mimms,* 434 U.S. 106, 111 n.6 (1977). *See also Maryland v. Wilson,* 519 U.S. 408 (1997) (an officer may order passengers to get out of a vehicle pending completion of a traffic stop "as a precautionary measure, without reasonable suspicion that the passenger poses a safety risk."). Officer Pewtress then requested that Defendant put his hands on the vehicle to conduct a pat down. Officer Pewtress testified that Defendant refused to comply with these instructions and Officer Wolford testified that Defendant was irate and kept talking over Officer Pewtress. Officer Pewtress then secured Defendant's hands with two sets of handcuffs before conducting a pat down. Officer Pewtress did not find anything illegal on Defendant. Officer Pewtress testified that after he finished the pat down, he asked Defendant for permission to search the vehicle. The Court finds that Officer Pewtress asking whether or not he could search Defendant's vehicle indicates the original investigation of the traffic violation ended, as such inquiry was unrelated to the traffic violations of driving a vehicle with an expired registration and driving without a license.

"Investigative questioning regarding criminal activity does not, in itself, implicate the Fourth Amendment." *Chargualaf,* 2001 Guam 1 ¶ 20 (citing *Florida v. Royer,* 460 U.S. 491 (1983)). "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Florida v. Bostick,* 501 U.S. 429, 434 (1991) (citing *Terry v. Ohio,* 392 U.S. 1, 19, n.16 (1968)). *See also, Chargualaf,* 2001 Guam 1 ¶ 20 (the "Fourth Amendment is only at issue where the police detain or seize an individual while posing investigative questions."). Here, as Defendant

had been handcuffed prior to the pat down, he was seized, thereby implicating the Fourth Amendment, as he would not believe that he was free to leave. *See Chargualaf,* 2001 Guam 1 ¶ 21. The Court further notes that the violations of Title 16 that Defendant was subject to were civil violations punishable by a fine. Under Guam law, an officer may arrest a person without a warrant under certain enumerated circumstances.[1] *See* 8 G.C.A. § 20.15(a). The Court does not find that any of the enumerated circumstances apply to the traffic violations in this matter. "An offense defined by [Title 9] or by any other statute of this Territory, for which a sentence of imprisonment is authorized, constitutes a crime. Crimes are classified as felonies, misdemeanors or petty misdemeanors." 9 G.C.A. § 1.18(a). "An offense defined by [Title 9] or by any other statute of this Territory constitutes a violation if it is so designated in [Title 9] or in the law defining the offense or if no other sentence than a fine, or fine and forfeiture or other civil penalty is authorized upon conviction. A violation does not constitute a crime and conviction of a violation shall not give rise to any disability or legal disadvantage based on conviction of a criminal offense." 9 G.C.A. § 1.18(f). In 2013, the Guam Legislature specifically repealed and re-enacted 16 G.C.A. § 9108 to change violations of Title 16 from a petty misdemeanor to a civil violation punishable by a fine. *See* P.L. 32-027 (May 10, 2013). Therefore, at this time, there was no valid basis for any search incident to arrest, as conceded to by the Government. (Opp'n at 6).

"In the absence of a warrant, the police may lawfully conduct a search or seizure only if an exception to the warrant requirement applies. Voluntary consent is a recognized exception to

---

[1] Title 8 GCA section 20.15 provides in relevant part:

A police officer may arrest in obedience to a warrant, or may, without a warrant, arrest a person:
(1) Whenever the officer has reasonable cause to believe that the person to be arrested has committed an offense in the officer's presence;
(2) When the person arrested has committed a felony, although not in the officer's presence;
(3) Whenever the officer has reasonable cause to believe that the person to be arrested has committed a felony or misdemeanor whether or not a felony or misdemeanor has in fact been committed;
(4) Who has escaped from any jail or prison or the lawful custody of a peace officer.

8 G.C.A. § 20.15(a).

the warrant requirement." *Chargualaf,* 2001 Guam 1 ¶ 14 (internal citations omitted). The Court must examine, based on the totality of the circumstances, whether Defendant's consent was voluntary. *See id.* at ¶ 25. The Court examines the following factors:

> 1) whether the defendant was detained and the length of time of the questioning; 2) whether the defendant was threatened or intimidated by the police; 3) whether the defendant relied on misrepresentations or promises made by the police; 4) whether the defendant was in custody or under arrest when the consent was given; 5) whether the defendant was in a public or secluded place; and 6) whether the defendant objected to the search.

*Id.* (citation omitted). The Government has the burden to prove by a preponderance of evidence whether Defendant's consent was voluntary. *Id.* In its opposition, the Government concedes that "if the consent is found to be invalid then suppression would be proper." (Opp'n at 6).

In evaluating these factors, the Court finds the fact that consent was given after he was detained in handcuffs strongly weighs in favor of suppression. This detention began almost immediately after Defendant was asked to exit the vehicle and undergo a pat down for weapons. Defendant was secured with two sets of handcuffs after he refused to place his hands on the vehicle. The Court acknowledges that the stop was effectuated in public, in the parking lot of San Jose Market in the afternoon and that there was no testimony that Officer Pewtress was overly aggressive or that any firearms were pulled out. There was also no testimony that Defendant ever objected to the search of the vehicle and Officer Pewtress testified that Defendant reminded him he gave consent to search. The Court notes, however, that at some point there were three officers present at the scene – Officer Pewtress, Officer Wolford, and Sergeant Santos – although it was not clear from the testimony where Sergeant Santos was physically present. Officer Wolford testified that Sergeant Santos was present to calm Defendant down. It was also not clear from the testimony the length of time of the questioning of Defendant. Officer Pewtress testified that the entire interaction lasted less than fifteen minutes, while Officer Wolford testified that Defendant consented to a search of the vehicle thirty minutes after the effectuation of the traffic stop. Officer Pewtress also testified that Defendant was advised of his *Miranda* rights after he began searching the car and Defendant was arrested prior to the discovery of the suspected methamphetamine.

Accordingly, the Court does not find that the Government has met its burden in showing that Defendant's consent to search the vehicle was voluntary. The Court therefore grants Defendant's Motion to Suppress.

**CONCLUSION**

For the foregoing reasons, the Court hereby GRANTS Defendant's Motion to Suppress. Parties shall return for a Status Hearing on **July 25, 2023** at **10:00 a.m.**

**IT IS SO ORDERED** this 26TH day of June, 2023.

_____
HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam